**CURTIS MALLET-PREVOST
  COLT & MOSLE LLP**
Gabriel Hertzberg
Jonathan J. Walsh (*pro hac vice* pending)
Kevin A. Meehan (*pro hac vice* pending)
101 Park Ave.
New York, NY 10178
Phone: 212-696-6000

*Attorneys for Plaintiff Tecnimont SpA*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

---

| | |
|---|---|
| Tecnimont SpA, | |
| Plaintiff, | Civil Action No. _____ |
| v. | **COMPLAINT AND** <br> **DEMAND FOR JURY TRIAL** |
| Holtec International, a New Jersey Corporation, | |
| Defendant. | |

---

Plaintiff Tecnimont SpA ("Plaintiff" or "Tecnimont"), having a registered office at Via Gaetano De Castillia 6/A, 20124 Milan, Italy, by and through its undersigned counsel, for its complaint against Holtec International, a New Jersey Corporation ("Defendant" or "Holtec"), having its principal place of business at One Holtec Drive, Marlton, New Jersey 08053, alleges as follows:

## INTRODUCTION

1.   This action arises out of the malicious and defamatory statements made by Holtec to Tecnimont's client and business partners. Holtec has deliberately and intentionally interfered with Tecnimont's contractual and business relationships, damaging Tecnimont's

1

business reputation and causing Tecnimont to suffer significant damages, all for the purposes of protecting Holtec from the consequences of its own incompetence and misconduct.

2. Tecnimont is an engineering, procurement and commissioning contractor on a project to build a large thermoelectric power plant in Punta Catalina, Dominican Republic (the "Power Plant").

3. In October 2014, Tecnimont placed an order with Holtec to purchase a pair of steam condensers (the "Condensers" and, each one a "Condenser") for the Power Plant. Holtec was supposed to deliver the first fully fabricated, fully tested Condenser in October 2015 and then deliver the second fully fabricated, fully tested Condenser in December 2015. However, delivery of the Condensers was significantly delayed due to problems with Holtec's supply chain and Holtec's own gross incompetence. The first Condenser was delivered a year behind schedule in October 2016. Holtec then delivered a partially completed second Condenser in November 2016.

4. On January 12, 2017, Holtec sent a letter (the "Letter") to Corporación Dominicana de Empresas Eléctricas Estatales ("CDEEE") – Tecnimont's client and the owner of the Power Plant. A copy of the Letter is attached as Exhibit A. Upon information and belief, Holtec caused the Letter to be circulated to Tecnimont's other business partners on the Power Plant project.

5. In the Letter, Holtec grossly mischaracterizes the circumstances relating to the manufacture and delivery of the Condensers and wrongly attempts to shift the blame for its own failures to Tecnimont. Specifically, Holtec maliciously casts aspersions on Tecnimont's performance under its contract with CDEEE and falsely asserts that Tecnimont's conduct is somehow preventing the "successful completion and commissioning of the [Condensers]."

Holtec has no factual basis for such an assertion. It is demonstrably false and Holtec knew it to be false when it wrote the Letter.

6. Upon information and belief, Holtec has continued to send false and defamatory communications to CDEEE and Tecnimont's other business partners.

7. Holtec sent the Letter and other communications (collectively, the "Communications") with the intention of interfering with Tecnimont's contractual and business relations with CDEEE and other business partners. The Communications had their intended effect and have caused significant injuries to Tecnimont, including, but not limited to, lost profits under the contract with CDEEE. Moreover, the spurious lies in Holtec's Communications have irreparably harmed Tecnimont's sterling reputation.

8. Tecnimont brings this action for tortious interference with contractual relations, tortious interference with existing economic advantage, tortious interference with prospective economic advantage and defamation to hold Defendant liable for its malicious and defamatory conduct.

## THE PARTIES

9. Plaintiff Tecnimont is a corporation organized and existing under the laws of Italy, having its principal place of business in Milan, Italy.

10. Defendant Holtec is a corporation organized and existing under the laws of the State of New Jersey, having its principal place of business at One Holtec Drive, Marlton, New Jersey 08053.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1332 because this is a dispute between a citizen of New Jersey and a citizen of a foreign state and the amount in controversy exceeds $75,000.

12. This Court has personal jurisdiction over Defendant because it is a New Jersey corporation and therefore "at home" in this forum.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant resides within this district and because acts giving rise the claims asserted herein occurred within this district.

## ALLEGATIONS

14. Plaintiff Tecnimont is one of the world's leading providers of engineering, procurement and construction services for onshore downstream and power applications.

15. Tecnimont is well known and well regarded for providing engineering, procurement and construction services in connection with the development, design and construction of power generation plants and other major infrastructure projects within the energy sector.

16. Tecnimont's hard earned reputation for competence, entrepreneurship and adaptiveness is a driving force behind Tecnimont's success as one of the world's top ranked providers of engineering, procurement and construction services.

**The EPC Contract**

17. Tecnimont is part of a consortium (the "Consortium") that was awarded a contract to build the Power Plant in the Dominican Republic. The other members of the

Consortium are Constructora Norberto Odebrecht, S.A., a Brazilian corporation ("Odebrecht"), and Ingenieria Estrella, S.R.L., a Dominican corporation ("Estrella").

18. The Consortium was awarded the contract to build the Power Plant by CDEEE following a bidding process. CDEEE is a state-owned power utility in the Dominican Republic and the ultimate owner of the Power Plant.

19. On April 14, 2014, the Consortium and CDEEE executed an Engineering, Procurement and Construction Contract (the "EPC Contract") that governs, among other things, the design and construction of the Power Plant. The EPC Contract is a large and lucrative contract, and Tecnimont expects that the value of its share of the EPC Contract is worth hundreds of millions of dollars.

20. Pursuant to the EPC Contract, Tecnimont is obligated to perform engineering, procurement and construction services in connection with the design and construction of the Power Plant. In particular, Tecnimont is responsible for the design, construction and commissioning of the two Condensers for the Power Plant.

**Tecnimont Orders the Condensers from Holtec**

21. In October 2014, Tecnimont agreed to purchase the Condensers from Holtec for a total purchase price of USD $5,075,080.

22. The Condensers were to be manufactured in accordance with certain requirements and specifications provided by Tecnimont.

23. Holtec manufactures heat transfer equipment, including steam condensers, for use in power generation facilities. However, Holtec did not manufacture the Condensers. Rather, Holtec subcontracted the manufacture the Condensers to a firm called Godrej, a subcontractor located in Mumbai, India. Godrej had never before manufactured a steam

5

condenser of the type required by this project.  Accordingly, Holtec was supposed to provide qualified, skilled personnel from the United States to supervise and assist Godrej during the manufacturing process. Holtec was also supposed to perform various quality control testing on the Condensers and to provide testing records and certificates.

24. Holtec was supposed to deliver the first fully fabricated, fully tested Condenser in October 2015.  It was then supposed to deliver the second fully fabricated, fully tested Condenser in December 2015.  Holtec failed to meet either deadline because of persistent problems with its supply chain and its negligence in adequately supervising and assisting its subcontractor, Godrej, which was not competent to handle this manufacturing project by itself.  As a result of Holtec's gross incompetence, the first Condenser was not delivered until October 2016 – a year behind schedule.  Holtec then tendered a second Condenser on November 2016 that was only partially fabricated.

**Holtec Defames Tecnimont and Interferes with the EPC Contract  
and Tecnimont's Relationships with CDEEE and the Consortium**

25. Holtec has known, at all relevant times, that Tecnimont is a party to the EPC Contract with CDEEE and the Consortium.

26. On January 23, 2017, Tecnimont learned that Holtec sent the Letter to CDEEE.  Tecnimont had never before seen the Letter, and Holtec never informed Tecnimont that it planned to communicate with CDEEE.  In the Letter, Holtec complains about payment issues and falsely blames Tecnimont for Holtec's own failures and the failures of Holtec's subcontractor, Godrej.  The Letter contains several falsehoods.

27. Holtec states in the Letter that Tecnimont's conduct impeded Holtec's ability to perform and is somehow preventing the "successful completion and commissioning of the [Condensers]."  This statement is false, and Holtec knew it to be false when made.

Tecnimont is in no way responsible for Holtec's failure to timely deliver fully fabricated Condensers. Holtec's failure to timely deliver fully fabricated, fully tested Condensers is a product of its own incompetence. Among other things, Holtec had persistent problems with its supply chain and it refused to adequately supervise and assist Godrej.

28. Holtec also falsely states in the Letter that its own failures were somehow caused by Tecnimont's requests for what it refers to as a "Change Order." In reality and as Holtec knows full well, this "Change Order" was made to allow Holtec to deliver one condenser in partially completed form because Holtec was unable to deliver the completed condenser within the required timeframe. No such "Change Order" would have been necessary if Holtec delivered the Condensers on time in October and December 2015.

29. Holtec caused the Letter to be circulated to Odebrecht and Estrella as well. On March 7, 2017, the Project Director sent the Letter to Tecnimont and asked that Tecnimont "resolve the situation with Holtec." Letter from C. Coutinho dated March 7, 2017, attached as Exhibit B.

30. On March 10, 2017, Tecnimont responded to the Project Leader's letter, vehemently denying the allegations in the Letter. Letter from C. Cimpuieru dated March 10, 2017, attached as Exhibit C.

31. On March 15, 2017, the Project Leader sent another letter to Tecnimont, advising that a Holtec representative had called CDEEE to tell them that the commercial problems had not been resolved and to emphasize to CDEEE the "concerns related to the reliability of Punta Catalina power plant." Letter from C. Coutinho dated March 15, 2017, attached as Exhibit D.

32. Upon information and belief, Holtec has continued to send additional communications to CDEEE, Odebrecht and Estrella containing the same and/or similar false and defamatory statements as those contained in the Letter.

33. Upon information and belief, Holtec intended the Communications to irreparably harm Tecnimont's contractual and business relations with CDEEE, Odebrecht and/or Estrella and/or to precipitate actions by CDEEE, Odebrecht and/or Estrella that would severely and irreparably harm Tecnimont.

34. CDEEE has informed Tecnimont that it plans to investigate the assertions in the Communications and will require additional testing of the Condensers to ensure compliance. Tecnimont will therefore have to expend time, money and resources on such an investigation and to otherwise dispel the malicious falsehoods in the Communications. This diversion of Tecnimont's attention from the business of finishing the Power Plant will compound the costs of responding to Holtec's lies and remediating its relationships with CDEEE and the Consortium. Such unnecessary burdens and expenditures will reduce Tecnimont's expected profits under the EPC Contract. These lost profits are a direct result of Holtec's false, malicious and defamatory statements in the Communications.

35. The Communications and the falsehoods contained therein have wrongfully caused significant harm to Tecnimont's reputation. A substantial portion of Tecnimont's business is derived from contracts awarded through intensive bidding procedures. Tecnimont's sterling reputation is critically important to winning such contracts. In addition, Tecnimont frequently needs to work together with other engineering and construction firms in order to submit joint bids for contracts to build very large and complex facilities. Tecnimont's reputation as a leading engineering, procurement and construction contractor is critically

important to its ability to join such business alliances. Tecnimont's unblemished reputation was a significant economic advantage when bidding on contracts and negotiating business partnerships for submitting joint bids. The reputational injury caused by Holtec's defamatory Communications has resulted in the loss of this significant economic advantage.

36. Upon information and belief, the Communications have also harmed Tecnimont's relationship with Odebrecht. The two companies have worked together for over a decade. For example, in addition to working together in the Consortium to build the Power Plant, Tecnimont and Odebrecht joined together in another consortium several years ago to provide engineering, procurement and construction services in connection with a refinery in Brazil. Tecnimont is pursuing business with Odebrecht on other projects, but the Communications have seriously jeopardized and materially interfered with Tecnimont's reasonable expectation of economic advantage with respect to such business prospects.

37. Holtec has no justification for sending the Communications. Holtec is not a party to the EPC Contract and has no rights thereunder. Moreover, Holtec has no relationship with CDEEE, Odebrecht or Estrella and has no right to contact those entities whatsoever regarding the project. Holtec certainly has no justification for spreading inflammatory lies about Tecnimont in an attempt to harm Tecnimont's reputation and to interfere with its relationships with CDEEE, Odebrecht and Estrella.

38. Upon information and belief, Holtec had never communicated with CDEEE, Odebrecht or Estrella prior to sending the Letter. Upon further information and belief, Holtec knew that neither CDEEE, Odebrecht nor Estrella were aware of Holtec's failure to timely deliver the Condensers and Holtec sought to capitalize on this informational gap by falsely representing the state of play to CDEEE, Odebrecht and Estrella. Holtec did so with the

intention of denigrating Tecnimont and interfering with Tecnimont's contractual and business relationships.

## COUNT I

**TORTIOUS INTERFERENCE WITH CONTRACT**
**(New Jersey Common Law)**

39. Plaintiff Tecnimont repeats and realleges paragraphs 1 through 38 as if fully set forth herein.

40. Tecnimont has a valid contract with CDEEE and the Consortium which required, among other things, that Tecnimont procure and commission the Condensers at the Power Plant. Tecnimont has a reasonable expectation that the value of its share of the EPC Contract is worth hundreds of millions of dollars.

41. Defendant knew that Tecnimont had a contract with CDEEE.

42. Defendant intentionally and maliciously sent the Communications to CDEEE in order to interfere with the EPC Contract and the contractual relationship between Tecnimont and CDEEE. Upon information and belief, Defendant intentionally and maliciously sent the Communications to the Consortium in order to interfere with the EPC Contract and the contractual relationship between Tecnimont and the Consortium.

43. Defendant had no right, privilege or justification to send the Communications or otherwise communicate directly with CDEEE or the Consortium. Defendant certainly had no right, privilege or justification to make the false and malicious statements contained in the Communications. Upon information and belief, Defendant sent the Communications to mischaracterize the circumstances concerning the manufacture of the Condensers and to deflect its responsibility for its failures to make timely and complete deliveries of the Condensers.

44. Defendant's Communications have in fact interfered with the EPC Contract. The Communications have impeded Tecnimont's ability to perform under the EPC Contract and/or have made Tecnimont's performance under the EPC Contract to be more burdensome and expensive. Because of the Communications, Tecnimont will have to expend time, money and resources on an investigation by CDEEE and to otherwise dispel the malicious falsehoods in the Communications. It is also possible that CDEEE or the Consortium may attempt other remedial actions under the EPC Contract because of the Communications.

45. Defendant has tortiously interfered with the EPC Contract and that tortious interference has caused serious and significant injury to Tecnimont, including, among other things, lost profits under the EPC Contract.

## COUNT II

### TORTIOUS INTERFERENCE WITH EXISTING ECONOMIC ADVANTAGE
(New Jersey Common Law)

46. Plaintiff Tecnimont repeats and realleges paragraphs 1 through 45 as if fully set forth herein.

47. Tecnimont has an existing business relationship with CDEEE pursuant to which Tecnimont would, among other things, procure and commission the Condensers at the Power Plant. Tecnimont has a reasonable expectation that the value of its engineering, procurement and commissioning services for the Power Plant is worth hundreds of millions of dollars.

48. Defendant knew that Tecnimont had an existing business relationship with CDEEE that related to Tecnimont's provision of engineering, procurement and commissioning services for the Power Plant.

49. Defendant intentionally and maliciously sent the Communications to CDEEE in order to interfere with the existing economic advantage that Tecnimont expected to derive from its business relationship with CDEEE.

50. Defendant had no right, privilege or justification to send the Communications or otherwise communicate directly with CDEEE.  Defendant certainly had no right, privilege or justification to make the false and malicious statements contained in the Communications.  Upon information and belief, Defendant sent the Communications to mischaracterize the circumstances concerning the manufacture of the Condensers and to deflect its responsibility for its failures to make timely and complete deliveries of the Condensers.

51. Defendant's Communications have in fact interfered with Tecnimont's existing business relationship with CDEEE.  In response to the Communications, CDEEE is demanding an investigation into the false and inflammatory statements contained therein and additional testing of the Condensers to ensure compliance.  Because of the Communications, Tecnimont will have to expend time, money and resources on an investigation by CDEEE and to otherwise dispel the malicious falsehoods in the Communications.  These expenditures will reduce the profits that Tecnimont reasonably expected to earn from its business relationship with CDEEE and, indeed, would have earned but for Defendant's Communications.

52. Defendant has tortiously interfered with Tecnimont's existing economic advantage and that tortious interference has caused serious and significant injury to Tecnimont, including, but not limited to, lost profits from its business relationship with CDEEE.

## COUNT III

### TORTIOUS INTERFERENCE WITH
### PROSPECTIVE ECONOMIC ADVANTAGE
### (New Jersey Common Law)

53. Plaintiff Tecnimont repeats and realleges paragraphs 1 through 52 as if fully set forth herein.

54. Tecnimont is providing engineering, procurement and commissioning services for CDEEE. Tecnimont has a reasonable expectation that the value of these services is worth hundreds of millions of dollars. Tecnimont further had a reasonable expectation of earning a profit from its provision of these services.

55. In addition, Tecnimont was pursuing potential business with Odebrect and had a reasonable expectation of economic advantage in relation to this pursuit of business because of its sterling reputation in the engineering, procurement and construction industry as well as it longstanding business relationship with Odebrecht.

56. Defendant also knew that Tecnimont was providing engineering, procurement and commissioning services for CDEEE and that Tecnimont expected to profit from such services.

57. Defendant knew that Tecnimont had an existing relationship with Odebrect. And, upon information and belief, Defendant knew that Tecnimont was pursuing additional business with Odebrecht.

58. Upon information and belief, Defendant intentionally and maliciously sent the Communications to CDEEE and Odebrecht in order to interfere with the prospective economic benefits that Tecnimont reasonably expected to receive from CDEEE and Odebrecht.

59. Defendant had no right, privilege or justification to send the Communications or otherwise communicate directly with CDEEE and Odebrecht. Defendant certainly had no right, privilege or justification to make the false and malicious statements contained in the Communications. Upon information and belief, Defendant sent the Communications to mischaracterize the circumstances concerning the manufacture of the Condensers and to deflect its responsibility for its failures to make timely and complete deliveries of the Condensers.

60. Defendant's Communications have in fact interfered with Tecnimont's prospective economic advantage. As a result of the Communications, Tecnimont will suffer lost profits because of the expenditures needed to remediate the harm caused by the Communications and to dispel the inflammatory and malicious lies contained therein.

61. Upon information and belief, the false and inflammatory statements in the Communications were intended to embarrass Tecnimont and have in fact directly caused reputational harm to Tecnimont. Defendant's spurious lies are particularly damaging because Tecnimont's stellar reputation as a top ranked provider of engineering, procurement and construction services is critical to its success. And, upon information and belief, those lies have already impaired Tecnimont's prospective economic advantage with Odebrecht.

62. Defendant's tortious interference with Tecnimont's prospective economic advantage has caused serious and significant injury to Tecnimont, including, but not limited to, lost profits and reputational harm. Upon information and belief, but for Defendant's Communications and the lies therein, there was a reasonable probability that Tecnimont would not have suffered lost profits on services provided under the EPC Contract and would have obtained future business with Odebrecht.

## COUNT IV

### DEFAMATION
### (New Jersey Common Law)

63. Plaintiff Tecnimont repeats and realleges paragraphs 1 through 62 as if fully set forth herein.

64. In the Communications, Defendant makes several defamatory statements.

65. The Defendant's defamatory statements concern Tecnimont, its business reputation and its performance under the EPC Contract.

66. The Defendant's defamatory statements are false. The facts stated in and/or underlying the defamatory statements are demonstrably false.

67. Defendant knew its statements were false when made. At minimum, Defendant's statements were made with reckless disregard for the truth of the matters asserted.

68. Defendant maliciously sent the Communications to CDEEE and, upon information and belief, to the Consortium.

69. Defendant made the defamatory statements knowing that those false statements would cause injury to Tecnimont. Upon information and belief, Defendant made the defamatory statements in an attempt to fraudulently shift the blame for its own failures in manufacturing and delivering the Condensers to Tecnimont.

70. Defendant made the defamatory statements in an effort to harm Tecnimont, its business reputation and its goodwill.

71. The Defendant's defamatory statements did in fact cause harm to Tecnimont's previously unblemished reputation as a word class provider of engineering, procurement and construction services. The resulting injury to Tecnimont's reputation has caused Tecnimont to suffer actual damages, including, but not limited to, lost profits.

15

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Tecnimont respectfully request this Court enter judgment in its favor as follows:

(1) Awarding Plaintiff compensatory, consequential and actual damages in an amount to be proven at trial;

(2) Awarding Plaintiff punitive damages sufficient to punish Defendant for its malicious and tortious conduct and to deter other similarly situated individuals from engaging in such conduct;

(3) Awarding Plaintiff presumptive damages and any other damages available at law;

(4) Permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, subsidiaries and all persons in active concert or participating with any of them from repeating the defamatory statements made in the Communications to anyone and from otherwise directly contacting or communicating with CDEEE, Odebrecht, Estrella and/or any other stakeholder in the Power Plant project;

(5) Awarding Plaintiff pre-judgment and post-judgment interest;

(6) Awarding attorney's fees and costs; and

(7) Awarding Plaintiff any such other and further relief as may be deemed just and proper.

## **JURY DEMAND**

Plaintiff Tecnimont demands a trial by jury on all issues so triable.

Dated: July 14, 2017

          **CURTIS, MALLET-PREVOST,**
           **COLT & MOSLE LLP**

      By: /s/ *Gabriel Hertzberg*
         Gabriel Hertzberg
         Jonathan J. Walsh (*pro hac vice* pending)
         Kevin A. Meehan (*pro hac vice* pending)
         101 Park Ave.
         New York, NY 10178
         Phone: 212-696-6000

         *Attorneys for Plaintiff Tecnimont SpA*

## **CERTIFICATION**

Pursuant to L. Civ. R. 11.2 and 28 U.S.C. § 1746, I hereby certify under the penalty of perjury that the matter in controversy is not the subject of any other action pending in any court or the subject of any pending arbitration or administrative proceeding. While defendant has submitted to plaintiff a notice of arbitration, the claims identified in that notice of arbitration, and the facts and circumstances relating thereto, are different and independent from the claims alleged in this Complaint.

          /s/ *Gabriel Hertzberg*
          Gabriel Hertzberg